**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEC 1 5 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA, DOJ )
555 4th St. NW Plaintiff, )
Waen, DC 20530 )
      v. )
)
$6,976,934.65 PLUS INTEREST )
DEPOSITED INTO )
ROYAL BANK OF SCOTLAND )
INTERNATIONAL, ACCOUNT )
NUMBER 2029-56141070, HELD )
IN THE NAME OF SOULBURY )
LIMITED, AND PROPERTY )
TRACEABLE THERETO )
      Defendant. )

Civil Action No.

CASE NUMBER   1:03CV02540

JUDGE: Royce C. Lamberth

DECK TYPE: General Civil

DATE STAMP: 12/■/2003
              15

## VERIFIED COMPLAINT IN REM FOR FORFEITURE

COMES NOW the UNITED STATES OF AMERICA, by and through its undersigned

attorneys, respectfully avers and alleges to this Court as follows:

1. This is an action in rem brought pursuant to the provisions of 18 U.S.C.

§981(a)(1)(A) and Rules C and E of the Supplemental Rules for Certain Admiralty and Maritime

Claims, which provide for forfeiture of property involved in, or traceable to property involved in,

a money laundering violation.

2. This Court has subject matter jurisdiction over this action by virtue of 18 U.S.C.

§981(a) and 28 U.S.C. §§1345, 1355(a) and (b), and 1395.

3. Venue is proper within this judicial district pursuant to 28 U.S.C. §§1355(b)(2) and

1395.

4. The defendant $6,976,934.65, plus interest, is traceable to funds previously deposited

and maintained in Account No. 2029-56141070, in the name of Soulbury Limited, at the Royal

Bank of Scotland International (Guernsey) ("RBSI"). The investment assets traceable to these

1

illicit funds are held by entities controlled by or affiliated with RBSI, including, but not limited

to, RBSI Investment Management, Rock Nominees Limited.  These custodians and properties are

located in the Bailiwick of Guernsey, United Kingdom, and thus are within the jurisdiction of

this Court pursuant to 28 U.S.C. §1355(b)(2).

   5.   In the summer of 2001, William Paul Scott, a.k.a., "Bill" or "Billy" Scott, ("Scott")

and his wife, Susan K. Scott, opened Account No. 2029-56141070 at RBSI in the name of

Soulbury Ltd. ("Soulbury"), a British Virgin Islands international business company.  Based

upon the information in documents filed with RBSI, Scott and his wife appear as the "beneficial

owners"of Soulbury and were the sole signatories to all Soulbury related accounts at RBSI.

Based upon information and belief, only Scott, or persons acting at his instruction, exercised any

control or dominion over the Soulbury accounts while his wife has not exercised any control over

said funds.

   6.   Scott has a lengthy criminal history in the United States involving illegal gambling

activity and related offenses that date back to the mid-1960's.  Scott received three concurrent

eight year sentences entered in 1984 after his guilty plea to three counts of a six count 1983

criminal indictment in the United States District Court for the Northern District of Ohio.  This

1983 indictment included one count of violating the Racketeer Influenced and Corrupt

Organizations Act based upon multiple predicate acts of bribery of police officials, the act of

conducting an illegal bookmaking business, and multiple acts of extortion for the payment of

gambling debts through threats of the use of violence or other criminal means to cause harm to a

person.  The indictment also contained five counts of extortion for the payment of gambling

debts through threats of the use of violence or other criminal means to cause harm to a person.

7. In March, 1998, the U.S. District Court for the Southern District of New York issued arrest warrants for William Paul Scott and Jessica Pauline Davis-Dyett ("Davis") based on a criminal complaint for federal gambling violations related to the their operation of World Wide Tele-Sports ("WWTS"), an Internet gambling concern based in Antigua. Scott and Davis, currently fugitives from that criminal complaint, were aware of the complaint and the outstanding arrest warrants at all relevant times. Scott and Davis have not entered the United States to submit to that court's jurisdiction, or have otherwise evaded that court's jurisdiction, and currently are not confined or held in custody by any other jurisdiction.

8. Under U.S. law, it is unlawful for anyone engaged in the business of betting or wagering to knowingly use "a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers" as set forth in 18 U.S.C. §1084.

9. At all relevant times, Scott and Davis owned, operated, and/or controlled WWTS and related entities, which primarily offer sports betting services to U.S. residents through English language "Internet" web sites. WWTS and related entities were heavily marketed to U.S. gamblers via the Internet and print and broadcast media. U.S. gamblers, using personal computers at home, work or elsewhere connect to the Internet through the use of Internet Service Providers ("ISPs") that are primarily located within the United States or are otherwise connected to computer networks within the United States. Once connected to the Internet, U.S. gamblers "link" to the WWTS' (or related entities') sports gambling web site. A U.S. gambler's computer

accesses an ISP and the Internet through cable televison connections, telephone lines or other

means of electronic communication systems that meet the definition of "wire communications

facilities" within the meaning of 18 U.S.C. §1084. WWTS and related entity web sites are

located outside the United States, thereby causing U.S. gamblers to link to the WWTS or related

Internet gambling web sites and to enter into "interstate or foreign commerce" within the

meaning of 18 U.S.C. §1084.

10. The WWTS and related Internet gambling web sites allow U.S. gamblers to set-up

"accounts" over the Internet by acquiring from the U.S. gambler certain personal identification

information and asking the U.S. gamblers to select a personal identifier and password for such

accounts. Once the U.S. gambler's account has been set-up, he or she must select one of various

payment mechanisms approved and controlled by WWTS or related entities and/or obtain

instructions on the use of such payment mechanisms. All payment mechanisms offered by

WWTS or related entities qualify as financial or monetary transactions, an element of money

laundering in violation of 18 U.S.C. §§1956(c)(3) and 1957(f)(1). Thereafter, based upon written

instructions obtained from WWTS or related entities web site or verbal instructions given by

WWTS or related entities employees or agents over the phone, WWTS and related entities cause

U.S. dollars to be transported, transmitted or transferred from locations within the United States

to locations outside of the United States. Once the U.S. funds are received by WWTS or its

agents, the U.S. gambler obtains a "credit" on his or her Internet gambling account. This "credit"

can be used by the U.S. gambler to place sports bets with WWTS or related entities, either

electronically via the Internet or verbally via telephone conversations with WWTS employees or

agents in Antigua or elsewhere.

11. From early 1997 through at least December 2002, Scott, Davis and others known and unknown, operated WWTS and related Internet gambling web sites for the purpose and in the business of betting and wagering thereby knowingly using U.S. wire communication facilities for transmission into foreign commerce of bets and wagers on sporting events and contests or information assisting in the placement of same, all in violation of 18 U.S.C. §1084.

12. Consolidated Gaming Corporation Limited (now Betcorp Limited), an Australian company that was allegedly in the process of purchasing WWTS and related businesses from Scott in February of 2003, issued an Australian Stock Exchange prospectus stating that Scott was the sole owner of WWTS through at least January 23, 2003, and that WWTS and related entities accepted at least $1.6 billion (U.S.) in sports bets and wagers between January of 2001 and October 31, 2002. The prospectus indicated that these sports bets and wagers were accepted principally from gamblers located in the North America, a great portion of which were located in the United States. More than 93 percent of all sports bets handled by WWTS involved North American sporting events which primarily appealed to U.S. gamblers.

13. Hundreds of millions of U.S. dollars gambled by U.S. residents based upon instructions received from WWTS and related entities were transported, transferred or transmitted from places within the United States to places outside the United States, with the intent to promote the gambling activities of WWTS, Scott, Davis and others, known and unknown from early 1997 through at least December 2002.

14. Scott caused more than $6,976,934.65 of illegal income generated by WWTS and related entities to be transferred from bank accounts in the Caribbean into RBSI Account No. 2029-56141070 , through bank accounts located in the United States on the following dates, in

the following amounts, and from and through the following accounts:

On or about August 15, 2001, Scott caused about $3,157,575.51 (U.S.), to be wire-transferred from a Bank of Nevis Limited account, held in the name of Safeway Holdings Limited, through an account at ABN-AMRO Bank, N.V., New York;

On or about August 21, 2001, Scott caused about $2,000,000 (U.S.) to be wire-transferred from a St. Kitts-Nevis-Anguilla National Bank account held in the name of Phone Plus, Inc., through an account at Bankers Trust Company, New York;

On or about August 23, 2001, Scott caused about $2,000,000 (U.S.) to be wire-transferred from a St. Kitts-Nevis-Anguilla National Bank account held in the name of Phone Plus, Inc., through an account at Hamilton Bank, N.A., Miami;

On or about August 31, 2001, Scott caused about $3,000,000 (U.S.) to be wire-transferred from a St. Kitts-Nevis-Anguilla National Bank account held in the name of Phone Plus, Inc., through an account at Bank of America, New York;

On or about October 29, 2001, Scott caused about $100,000 (U.S.) to be wire-transferred from an Antigua Overseas Bank Ltd. account held in the name of Omni of the Caribbean, through an account at ABN-AMRO Bank, N.V., New York;

On or about November 5, 2001, Scott caused about $93,357.57 (U.S.) to be wire-transferred from a Swiss American Bank Ltd. account held in the name of World Wide Tele Sports, through an account at ABN-AMRO Bank, N.V., New York;

On or about November 5, 2001, Scott caused about $96,822.63 (U.S.) to be wire-transferred from a Swiss American Bank Ltd. account held in the name of WWTS Inc. through an account at ABN-AMRO Bank, N.V., New York,

On or about June 7, 2002, Scott caused about $536,349.25 (U.S.) to be wire-transferred from a St. Kitts-Nevis-Anguilla National Bank account held in the name of Phone Plus, Inc., through one of three U.S. correspondent accounts in Miami or New York.

These eight wire-transfers also involved the transfer of the same funds to and through RBSI's

U.S. correspondent account at Harris Bank International, New York. A "correspondent account"

(or interbank account) is an account held by one financial institution at another financial

institution primarily for the purpose of facilitating customer transactions.

15. On or before March 4, 2002, Scott caused RBSI to transfer $10,000,000 (U.S.) from

Page 6 of 11

the Soulbury Ltd. RBSI Account No. 2029-56141070, to an investment company affiliated with

RBSI for further investment. RBSI controlled investment management services invested the

$10,000,000 in bonds, insurance funds and mutual funds held in Rock Nominees Limited,

Account No. A92, all for the further benefit of Soulbury, Limited. When RBSI questioned Scott

about the source of the funds and assets held by or managed by RBSI and its affiliate, Scott

and/or his representative, advised RBSI that he owned and operated WWTS, that WWTS was an

Internet gambling company, and that all of the funds deposited into RBSI Account No. 2029-

56141070 was his income from this "business" activity. Davis, acting on behalf of WWTS or

Scott, later told RBSI that Phone Plus, Inc., Safeway Holdings Ltd., and Omni of the Caribbean

were all companies owned and controlled by Scott, and were thus entities "related" to WWTS's

business.

**Count I**
Internationa1 Money Laundering with Intent to Promote a Specified Unlawful Activity

16.  Plaintiff incorporates and re-alleges the allegations contained in paragraphs 5 through

15, above.

17.  Beginning in 1997 and continuing through at least December 2002, Scott, with the

intent to promote the carrying on of illegal gambling in violation of 18 U.S.C. §1084 (a specified

unlawful activity), aided and abetted in the transportation, transmission, and transfer of funds

from places in the United States to and through places outside the United States, in violation of

18 U.S.C. §§2 and 1956(a)(2)(A), by accepting and processing hundreds of millions of dollars of

funds sent to WWTS and related entities in Antigua and other places outside of the United States.

18.  By reason of the foregoing, the $6,976,934.65, plus interest, deposited initially into

Page 7 of 11

RBSI Account No. 2029-56141070, and all assets in Rock Nominees Limited Account No. A92,

held in the name of Soulbury Limited, constitute property involved in money laundering

transactions or attempted money laundering transactions in violation of 18 U.S.C.

§1956(a)(2)(A), or is traceable to such property, and is, therefore, subject to forfeiture to the

United States pursuant to 18 U.S.C. §981(a)(1)(A).

**Count II**
Money Laundering of Criminal Proceeds in Amounts over $10,000 (U.S.)

19.  Plaintiff incorporates and re-alleges the allegations contained in paragraphs 5 through

18, above.

20.  As set forth in paragraphs 14 and 15 above, on at least nine occasions Scott

knowingly engaged in monetary transactions of criminally derived property with a value greater

than $10,000, money that is the proceeds from illegal gambling activity under 18 U.S.C. §1084,

a specified unlawful activity, in violation of 18 U.S.C. §1957.

21.  By reason of the foregoing, $6,976,934.65, plus interest, deposited into RBSI

Account No. 2029-56141070, and all assets in Rock Nominees Limited Account No. A92, held

in the name of Soulbury Ltd., represent property involved in money laundering transactions or

attempted money laundering transactions in violation of 18 U.S.C. §1957, and/or constitute any

property traceable to such property and, therefore, is/are subject to forfeiture pursuant to 18

U.S.C. §981(a)(1)(A).

**Count III**
Money Laundering Conspiracy

22.  Plaintiff here incorporates and re-alleges the allegations contained in paragraphs 5

through 21, above.

23.  Beginning on or about 1997 and continuing through December 2002, Scott and others conspired to transport, transmit and transfer and attempt to transport, transmit and transfer funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. §1956(a)(2)(A); and conspired to engage, attempt to engage and cause and aid and abet others in engaging in monetary transactions in criminally derived property that was of a value greater than $10,000, in violation of 18 U.S.C. §1957; all in violation of 18 U.S.C. §1956(h).

24.  By reason of the foregoing, $6,976,934.65, plus interest, deposited into RBSI Account No. 2029-56141070, and all assets in Rock Nominees Limited Account No. A92, held in the name of Soulbury Limited, constitute property involved in the transactions or attempted transactions of a money laundering conspiracy in violation of 18 U.S.C. §1956(h), or are traceable to such property and are, therefore, subject to forfeiture to the United States pursuant to 18 U.S.C. §981(a)(1)(A).

25.  For the purpose of executing forfeiture under 18 U.S.C. §981, when funds are deposited into an account at a foreign bank, as has occurred with the deposits made by Scott into RBSI Account No. 2029-56141070, and/or all assets in Rock Nominees Limited Account No. A92 held in the name of Soulbury Limited; and that foreign bank has an interbank account in the United States with a covered financial institution as defined in 31 U.S.C. §5318(j)(1), the funds shall be deemed to have been deposited into the interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant in rem regarding the funds may be served on the covered financial institution, namely Harris Bank in New York, New York.  Funds located in interbank Account Number 16028601, held in the name of Royal Bank of Scotland International,

Page 9 of 11

may be restrained, seized or arrested, up to the value of the funds deposited into the account at the

foreign bank, pursuant to 18 U.S.C. §981(k). As of December 8, 2003, the amount of funds traced

to the original deposit into the Soulbury Account was $6,976,934.65. Any interest accruing from

that amount as of the date of seizure is subject to forfeiture as well.

WHEREFORE, by reason of these premises, plaintiff, the United States of America, prays

that process issue for the arrest of the defendant funds and assets set forth above to enforce the

forfeiture and that notice be given to all interested parties to appear and show cause why the

forfeiture should not be decreed, and that the defendant funds set forth above be condemned as

forfeited to the United States of America for disposition according to law.

Respectfully submitted,

ROSCOE C. HOWARD, JR.
UNITED STATES ATTORNEY

ROBERT E.L. EATON JR., DC BAR #074625
Assistant United States Attorney
LINDA OTANI MCKINNEY, DC BAR #416548
Assistant United States Attorney

WENDY J. SILBERBERG, DC BAR #441317
Attorney Advisor
A.J. DE KLUIVER, LA. BAR #20163
Trial Attorney
Asset Forfeiture and Money Laundering Section
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone:    (202) 514-1263
Fax:          (202) 514-5522
Attorneys for Plaintiff
UNITED STATES OF AMERICA

Page 10 of 11

## **VERIFICATION**

I, Randall S. Carrow, Special Agent, Internal Revenue Service, Criminal Investigations Division, verify under penalty of perjury under the laws of the United States of America, as set forth in 28 U.S.C. § 1746, that I have read the foregoing complaint and know the contents thereof, that the information and knowledge about its contents were learned during the course of an investigation by the Internal Revenue Service, Criminal Investigations Division, and that the matter and things set forth in the Complaint are true to the best of my knowledge, information and belief.

Randall S. Carrow
Special Agent, Internal Revenue Service,
Criminal Investigations Division

Dated: _12/15/2003_