UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 03-2540 (RCL) |
| $6,976,934.65 PLUS INTEREST DEPOSITED INTO ROYAL BANK OF SCOTLAND INTERNATIONAL, ACCOUNT NUMBER 2029-56141070, HELD IN THE NAME OF SOULBURY LIMITED, AND PROPERTY TRACEABLE THERETO, | ) | |
| Defendant, and | ) | |
| SOULBURY LIMITED, | ) | |
| Claimant | ) | |

**MEMORANDUM OPINION**

Now before the Court comes plaintiff, the United States' motion [67] for summary judgment. Upon full consideration of the motion, claimant Soulbury Limited's opposition, the reply, the entire record herein, and applicable law, the Court will GRANT summary judgment in favor of the United States.

**I. BACKGROUND**

In this civil *in rem* action, the United States seeks forfeiture of nearly $7 million in defendant funds traceable to deposits in the Royal Bank of Scotland International ("RBSI"),

located on the island of Guernsey.[1]  The funds were deposited in an RBSI account held by a British Virgin Islands company named Soulbury Limited.  On December 15, 2003, the United States filed its Complaint and the Clerk of the Court issued a Warrant of Arrest *In Rem* for the defendant property.  The funds were seized on December 17, 2003 from an interbank account held by RBSI at Harris International in New York under the authority of 18 U.S.C. § 981(k), which under certain circumstances authorizes the seizure of funds held in an interbank account in the United States if the subject bank has an interbank relationship with an overseas institution in which the defendant funds are held.

Soulbury filed its claim to the funds on March 1, 2004 [4 and 5], an Answer on March 22, 2004 [8], and an Amended Answer on April 7, 2004 [10].

On March 21, 2007, this Court issued an opinion converting the government's Motion [53] to Strike Soulbury's claim and answer as a motion for summary judgment.[2]  *See United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30 (D.D.C. 2007) (Lamberth, J.).  The Court denied that motion without prejudice and ordered that the parties would have ninety days to conduct limited discovery on the applicability of the fugitive disentitlement statute, 28 U.S.C. § 2466, to Soulbury Limited, including inquiry into the ownership and control of Soulbury.  *Id.* at 46. The parties were instructed that the United States would have thirty days from the close of discovery to renew its motion for summary judgment.  *Id.* at 47.

---

[1] Guernsey is one of the semi-autonomous Channel Islands off the British coast.

[2] This Court's March 2007 opinion set out in great detail the underlying facts of this case and related criminal matters pending against fugitive William Paul Scott in both this District and the Southern District of New York.  The Court will not repeat these facts in such extensive detail here.

On August 20, 2007, upon completion of the ninety-day discovery period, the parties stipulated that William Paul Scott was the majority shareholder of Soulbury Limited. (*See* Ex. A to Mot. [67] for Summ. J.) Based on this stipulation, the government refiled its motion for summary judgment [67]. Soulbury argues against summary judgment by questioning the constitutionality of the fugitive disentitlement statute and claiming—contrary to this Court's March 2007 opinion—that the statute is not a threshold issue that may be decided prior to Soulbury's improper venue and failure to state a claim arguments.

## II.     APPLICABLE LAW

### A.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the evidence, when viewed in light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party. *Id.* at 252. The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to a judgment as a matter of law if the non-moving party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### B. Fugitive Disentitlement Statute

The fugitive disentitlement statute is based on a doctrine that developed at common law.[3] The statute, 28 U.S.C. § 2466, was enacted in 2000 and sought to deal with the "unseemly spectacle" of "a criminal defendant who, facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction." *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004). The disentitlement statute, titled "Fugitive disentitlement," reads as follows:

> (a) A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person –
> > (1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution –
> > > (A) purposely leaves the jurisdiction of the United States;
> > > (B) declines to enter or reenter the United States to submit to its jurisdiction; or
> > > (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person; and
> > 
> > (2) is not confined or held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.
> 
> (b) Subsection (a) may be applied to a claim filed by a corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies.

28 U.S.C. § 2466.

---

[3] In *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 35–36 (D.D.C. 2007) (Lamberth, J.), this Court discussed the statute's common-law origins in detail. The Court found that by enacting 28 U.S.C. § 2466, Congress revived the common-law doctrine, such that pre-*Degen v. United States*, 517 U.S. 820 (1996), case law applied insofar as it was consistent with the statute. The Court has heard no argument that would cause it to retread this ground.

Section 2466(a) has five prongs that must be met before a court *may*, in its sound discretion, invoke the disentitlement statute:

> (1) a warrant or similar process must have been issued in a criminal case for the claimant's apprehension; (2) the claimant must have had notice or knowledge of the warrant; (3) the criminal case must be related to the forfeiture action; (4) the claimant must not be confined or otherwise held in the custody in another jurisdiction; and (5) the claimant must have deliberately avoided prosecution by (A) purposefully leaving the United States; (B) declining to enter or reenter the United States, or (C) otherwise evading the jurisdiction of a court in the United States in which a criminal case is pending against the claimant.

*Collazos*, 368 F.3d at 198. If a required element of subsection (a) is not present, or if subsection (b) does not pertain, the Court lacks the authority to disallow the claim.

## III. ANALYSIS

### A. 28 U.S.C. § 2466 Requirements Are Satisfied

In this Court's March 21, 2007 opinion, the Court tentatively concluded that the record supported findings necessary to invoke the fugitive disentitlement statute to disallow Soulbury's claim. *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 46 (D.D.C. 2007) (Lamberth, J.). As discussed below, this conclusion is no longer tentative and the Court finds that all of the statutory requirements are satisfied. The Court is thus permitted to exercise its discretion to grant summary judgment in favor of the United States.

In the Court's earlier opinion, it found that the five-factor test outlined in 28 U.S.C. § 2466(a) was met: (1) warrants for the arrest of William Scott were issued in connection to the 1998 New York complaint and the 2005 District of Columbia indictment; (2) Mr. Scott had

notice of the warrants;[4] (3) the criminal matters were related to the forfeiture action for the purposes of the statute; (4) Mr. Scott was not in custody or otherwise confined in another jurisdiction; and, (5) Mr. Scott declined to enter the United States to avoid prosecution and has otherwise evaded the jurisdiction of the United States. *Id.* at 38–42. Thus, Mr. Scott is a person to whom 28 U.S.C. § 2466(a) applies.

The question of whether § 2466(b) directly authorizes disentitlement from Soulbury was unclear in March 2007. Based on the parties recent stipulation that Mr. Scott is the majority shareholder of Soulbury, this is no longer the case. The parties' stipulation makes clear that Soulbury is a corporation to which the disentitlement statute applies as described in § 2466(b). *See* 28 U.S.C. § 2466(b) (stating that the disentitlement statute applies to a "claim filed by a corporation if any majority shareholder . . . is a person to whom [§ 2466(a)] applies").

### B. Application of the Disentitlement Statute

Having determined that the fugitive disentitlement statute applies to Soulbury's claim, the Court finds that exercising its sound discretion to apply the statute in this case is proper. Soulbury makes assertions against application of the statute, most of which were made in earlier stages of these proceedings and which the Court previously rejected. This Court continues to find Soulbury's claims unconvincing. These claims center upon two basic arguments: (1) that the Due Process Clause bars application of the statute in civil forfeiture actions, and (2) that the Court should decide Soulbury's motions regarding improper venue and failure to state a claim

---

[4] Although ultimately concluding that either Mr. Scott or his agents had actual knowledge that he was subject to arrest in the United States, the Court's earlier opinion noted that this prong of the test would be far clearer if the United States could have proved that Mr. Scott effectively controlled Soulbury. The parties' recent stipulation as to Mr. Scott's ownership of Soulbury now permits the Court to impute Soulbury's knowledge of the outstanding warrants to Mr. Scott. Today, it is thus clearer to the Court that § 2466(a)'s notice prong is satisfied.

upon which relief can be granted prior to applying the fugitive disentitlement statute.

Regarding Soulbury's Due Process concerns, the Court continues to view disentitlement as treating "flight from justice as 'tantamount to waiver or abandonment' of certain rights." *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 45 (D.D.C. 2007) (Lamberth, J.) (citing *Ortega-Rodriguez v. United States*, 507 U.S. 234, 240 (1993)). This Court also previously noted that the Supreme Court—when it rejected the judicially-created disentitlement statute—"invited" Congress to enact a statute such as § 2466. *See id.* at 36 (discussing *Degen v. United States*, 517 U.S. 820 (1996)). Additionally neither Mr. Scott nor his alter ego Soulbury Limited are deprived of rights protected by the Due Process Clause because Mr. Scott may submit to the criminal jurisdiction of the District of Columbia or the Southern District of New York at anytime; he would then be free to assert his claim to the seized property. *See Collazos v. United States*, 368 F.3d 190, 202–05 (2d Cir. 2004) (determining that claimant's due process concerns did not inhibit the court's application of disentitlement because claimant voluntarily waived his rights by refusing to appear in related criminal proceedings). The Court finds no constitutional violation in the application of the fugitive disentitlement statute here.

As for Soulbury's argument that the Court should address the questions of venue and failure to state a claim before considering disentitlement, the Court disagrees. Again, this Court advises claimant Soulbury that it would be free to challenge seizure of the defendant property upon Mr. Scott's recognition of jurisdiction in the criminal matters currently pending against him. *See United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 45 (D.D.C. 2007) (Lamberth, J.); *see also United States v. Real Property Located at Incline Village*, 47 F.3d 1511, 1518 n.2 (9th Cir. 1995) (noting that the fugitive disentitlement doctrine precluded an owner from challenging seizure of his property); *United States v. One Parcel of Real Estate at 7707*

*S.W. 74th Lane*, 868 F.2d 1214, 1217 (11th Cir. 1989)) (stating that fugitives waive their rights to due process and considering the underlying action as "essentially . . . uncontested"). This recognition has not yet occurred, and accordingly the Court need not entertain Soulbury's challenges at this time.

**IV.     CONCLUSION**

All of the requirements set out in the fugitive disentitlement statute, 28 U.S.C. § 2466 have been met and the Court has determined that exercising its discretion to apply the statute in this case is appropriate. This Court concludes that pursuant to Federal Rule of Civil Procedure 56, there are no disputed issues of material fact and that the United States is entitled to judgment as a matter of law. The United States' motion for summary judgment will be GRANTED.

A separate Order shall issue this date.

Signed by United States District Judge Royce C. Lamberth on November 8, 2007.